E-FILED
Monday, 03 May, 2021  10:10:23 AM
Clerk, U.S. District Court, ILCD





AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

APR 1 4 2021

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Custom-Built Black Desktop That was in the Possession
of April Smith on April 4, 2020 currently located in FBI
evidence at 900 East Linton Avenue, Springfield, Illinois

)
)
)
)
)
)

Case No. 21-MJ- 3055

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Custom-Built Black Desktop That was in the Possession of April Smith on April 4, 2020 currently located in FBI evidence at 900 East Linton Avenue, Springfield, Illinois as fully described in Attachment A.

located in the _____Central_____ District of _____Illinois_____ , there is now concealed *(identify the person or describe the property to be seized):*

As fully described in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 2252 | Receiving and Possessing Visual Depictions of Minors Engaging in Sexual Activity |
| 18 U.S.C. Section 2252A | Receiving and Possessing Child Pornography |
| 18 U.S.C. Section 2422(b) | Attempted Enticement of a Minor |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/ Anthony Wright

_____
*Applicant's signature*

Anthony Wright, Special Agent FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____Telephone_____ *(specify reliable electronic means).*

s/ Tom Schanzle-Haskins

Date: 04/14/2021

_____
*Judge's signature*

City and state: Springfield, IL

Thomas Schanzle-Haskins, US Magistrate Judge
*Printed name and title*





APR 1 4 2021

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: | Case No. $\underline{21\text{-}mj\text{-}3055}$ |
| Custom-Built Black Desktop that was in the Possession of April Smith on April 4, 2020 currently located in FBI evidence at 900 East Linton Avenue, Springfield, Illinois | FILED UNDER SEAL |

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR
## A WARRANT TO SEARCH AND SEIZE

I, Anthony Wright, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.    I am an investigative and law enforcement officer of the United States, who is empowered by law to conduct investigations of and to make arrests for the offense(s) enumerated in the production, distribution, and

possession of child pornography, Title 18 of the United States Code (U.S.C.), as amended. As an FBI Special Agent, I am authorized to execute warrants issued under the authority of the United States.

3.      The statements contained in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.      The property to be searched is a custom-built black desktop with a Thermaltake label on the front, with a visible GEforce GTX hard drive, serial number 602-V809-722SD1709002312, and a visible Samsung hard drive, serial number C3161-G74A-A2IGQ, hereinafter "Device".  The device was found in the possession of April Smith, date of birth June 29, 1999, during an interview on April 2, 2021. According to Smith she used the Device every day, had the password to the Device, and was in physical possession of the Device at the time of the interview. Smith gave consent to Agents to seize and search the Device. The Device is currently located in FBI evidence at

2

900 East Linton Avenue, Springfield, Illinois 62703. Since the Device was shared property between Smith and the Subject Rafael Mercado Berrios, the applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## Statutory Authority

5.      This investigation concerns alleged violations of Title 18, United States Code, §§ 2251, 2252, 2252A, and 2422, relating to material involving the sexual exploitation of minors:

      a. 18 U.S.C. § 2251(a) prohibits a person from employing, using, persuading, inducing, enticing, or coercing any minor to engage in, or to have a minor assist any other person to engage in, or to transport any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for purpose of transmitting a live visual depiction of such conduct.

3

b. 18 U.S.C. § 2252 prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any visual depiction of minors engaging in sexually explicit conduct when such visual depiction was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such visual depiction was produced using materials that had traveled in interstate or foreign commerce.

c. 18 U.S.C. § 2252A prohibits a person from knowingly mailing, transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any child pornography, as defined in 18 U.S.C. §2256(8); when such child pornography was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such child pornography was produced using materials that had traveled in interstate or foreign commerce.

d. 18 U.S.C. §  2422(b): prohibits a person from using the mail or any facility or means of interstate or foreign commerce, to knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage

4

in prostitution or any sexual activity for which any person can

be charged with a criminal offense. It is also a crime to attempt

to commit this offense.

### Definition of Terms

6.      The following terms used in this affidavit have the indicated

meaning in this affidavit:

a. The term "minor" is defined at 18 U.S.C § 2256(1) as any

person under the age of eighteen years.

b. The term "sexually explicit conduct" is defined at 18 U.S.C. §

2256(2)(A) as actual or simulated – (i) sexual intercourse,

including genital-genital, oral-genital, anal-genital, or anal-oral,

whether between person of the same or opposite sex; (ii)

bestiality, (iii) masturbation; (iv) sadistic or masochistic abuse;

or (v) lascivious exhibition of the anus, genitals, or pubic area of

any person.

c. The term "visual depiction," as defined in 18 U.S.C . § 2256(5),

includes undeveloped film and videotape, data stored on

computer disc or other electronic means which is capable of

conversion into a visual image, and data which is capable of

conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

d.  The term "computer," as defined in 18 U.S.C. § 1030(e)(l), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

e.  The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks

6

(DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

f.  "Domain names" are common, easy to remember names associated with an IP address. For example, a domain name of "www.usdoj.gov" refers to the IP address of 149.101.1.32. Domain names are typically strings of alphanumeric characters, with each level delimited by a period.

g.  "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

h.  A "Preservation Letter" is a letter governmental entities may issue to Internet providers pursuant to 18 U.S.C. § 2703(f) to ensure that the Internet Providers preserve records in its

possession. The preservation of such records is necessary given the dynamic nature of digital records that may be deleted.

i. "Cloud Storage" is an online storage system over the Internet.

j. "Obscene" or "obscenity" is content that depicts or describes sexual conduct and that taken as a whole, appeals to the prurient interest in sex, is patently offensive in light of community standards, and lacks serious literary, artistic, political or scientific value. *Miller v, California*, 413 U.S. 15, 24 (1973); *United States v. Rogers*, 474 Fed. Appx. 463 (7th 2012). Images that can be construed as depicting masturbation can constitute "sexual conduct" and thus qualify as "obscenity." *Rogers*, 474 Fed. Appx at 467-471. Additionally, images depicting sexual arousal and concurrent chat exchanges advancing a sexual dialogue, also qualify as "obscenity." *Id.*

## CHARACTERISTICS OF ADULTS WITH A
## SEXUAL INTEREST IN CHILDREN

7.    Based upon my knowledge, experience and on my consultation with other knowledgeable and experienced law enforcement officers, I am aware that individuals who are often associated with offenses relating to sex crimes involving children and who evince a sexual interest in children

8

share common general characteristics that result in predictable behavior

and render the existence of such characteristics and behaviors probable in

any given case. I am also aware that search warrant affiants may base

their assessment of probable cause in any given case on the existence of

these general characteristics and behavior common to most persons who

evince a sexual interest in minors. See *United States v. Clark*, 668 F.3d

934, 937-940 (7th Cir. 2012). Accordingly, adult individuals who participate

in discussions with persons they believe to be minors and attempt to entice

them to travel to them to engage in illegal sexual activity are usually in

possession of child pornography. Similarly, adult individuals who send

obscene images of himself or herself to an individual they believe to be a

minor are usually themselves in possession of child pornography. Finally,

adult individuals who engage in online "grooming" activities with a person

they believe to be a minor are usually in possession of child pornography.

Accordingly, in such cases where there is probable cause to believe that an

individual has engaged in attempted enticement, distribution of obscene

material, or grooming, besides having probable cause to search for

evidence of the attempted enticement/grooming and distribution of obscene

material there is also probable cause to search for child pornography.

8.      Although, there can be variations in the length of time a particular offender dedicates to the online enticement and grooming of a targeted child and some of the steps may even get skipped, there appears to be a consistent and predictable pattern to the online seduction process including some or all of the following: (1) Establish rapport through some common interest; (2) Introduce sexual content and test child's willingness to discuss; (3)  Conduct a safety check to ascertain child's relationship with the parent and his/her susceptibility to outside influence; (4) Exchange photographs, often candid non-sexual photographs; (5) Send adult/child pornography or direct child to a site with sexual content; (6) Engage child in cybersex (graphic, sexual discussions specific to what the offender and the child will do); (7) Supplement with telephone conversations, usually very sexual in nature; and (8) meet.

9.      Individuals with a collection reflecting their sexual interests, including child pornography, usually maintain and possess their material in the privacy and security of their homes or some other secure location where it is readily available. The collection may include sexually explicit or suggestive materials involving children, such as photographs, magazines, narratives, motion pictures, video tapes, books, slides, drawings, computer images or other visual media.  The collector is aroused while viewing the

collection and, acting on that arousal, he often masturbates thereby fueling and reinforcing his sexual arousal patterns.  This is most easily accomplished in the privacy of his own home. Because the collection reveals the otherwise private sexual desires and intent of the collector and represents his most cherished sexual fantasies, the collector rarely, if ever, disposes of the collection. The collection may be culled and refined over time, but the size of the collection tends to increase. Child pornography, unlike some other kinds of contraband (e.g., drugs), is not "consumed" by the user. The "consumption" of this product results in its proliferation, more copies are generated. The very nature of computers as a means of collection, transmission, and/or storage lends itself to the permanent preservation of the item. If the collector relocates, his collection usually moves with him. Individuals who utilize a collection in the seduction of children or to document that seduction, treat the materials as prized possessions and are especially unlikely to part with them.

## CHARACTERISTICS OF SUBJECTS THAT POSSESS/DISTRIBUTE CHILD PORNOGRAPHY

10.    Based upon my knowledge, experience and consultation with other Special Agents and law enforcement officers, I am aware that individuals that have possession of, and/or distributes child pornography:

11

a. Receive sexual gratification, stimulation, and satisfaction from actual physical contact with children and/or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses (in person, in photographs, or other visual media) or from literature describing such activity.

b. Collect sexually explicit or suggestive materials (hard-core and soft-core pornography, whether of adults and/or children) in a variety of media, such as photographs, magazines, motion pictures, video tapes, books, slides and/or drawings or other visual media that they use for their own sexual arousal and gratification.

c. Almost always possess and maintain their material (pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, child erotica, etc.) in the privacy and security of their homes or some other secure location. Child pornography distributors/collectors typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years, and store

12

their child pornography amongst other, otherwise legal, media or files.

d. Often correspond and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

e. Individuals who collect, receive, distribute, transport and/or possess child pornography often maintain their collections in digital or electronic format in a safe, secure and private environment, such as a computer and/or any other electronic media that may be found in the surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the individual to easily view the collection, which is highly valued.

f. Individuals who collect, receive, distribute, transport and/or possess child pornography prefer not to be without their child pornography for any prolonged time period.

13

11.     This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

## COMPUTERS, MOBILE PHONES, AND CHILD PORNOGRAPHY

12.    Based upon my knowledge, training and experience, and the experience of other law enforcement personnel with whom I have spoken, I know that:

a. The internet is a worldwide computer network, which connects computers and allows communications and the transfer of data and information across state and national boundaries. Individuals who utilize the internet can communicate by using electronic mail ("email"). Email is an electronic form of communication, which can contain letter type correspondence and graphic images. Email is similar to conventional mail in that it is addressed from one individual to another and is usually private. Email usually contains a message header, which gives information about the individual that originated a particular message or graphic, and importantly, the return address to respond to them.

14

b. Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, and utilized. It has also revolutionized the way in which child pornography collectors interact with each other. Child pornography formerly was produced using cameras and film (either still photography or movies). The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contact, mailings, and telephone calls. Any reimbursement would follow these same paths.

c. The development of computers has added to the methods used by child pornography collectors to interact with and sexually exploit children. Computers serve four functions in connection

15

with child pornography. These are production, communication, distribution, and storage.

d. Child pornographers can now transfer illegal images in a computer readable format. A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Electronic contact can be made to literally millions of computers around the world. The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution and receipt of child pornography. Child pornography can be transferred via electronic mail or through file transfer protocols (FTP) to anyone with access to a computer and modem. Because of the proliferation of commercial services that provide electronic mail service, chat services and easy access to the Internet, the computer is a preferred method of distribution and receipt of child pornographic materials.

e. Collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Google Corporation,

16

Yahoo! and Google, Inc., among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet.

## PROBABLE CAUSE

13.  On August 24, 2020, law enforcement conducted an undercover investigation targeting subjects who were attempting to engage in sexual activity with minors.  During the operation, online covert employees (OCE) used a covert social media account to pose as a minor.

14.  Starting on approximately August 24, 2020, a profile with the name of Jose Mer, later identified as Rafael Mercado Berrios, initiated a message conversation with the OCE.  The OCE responded to the message, and a short time later, this excerpt of conversation occurred:

> Berrios:  U got more pictures?
>
> OCE:      Ya. Lol.
>
> Berrios:  I ask because normally 1poc on an account means its fake.
>
> Berrios:  pic*

17

Berrios: Ok message me now…whenever you want.

Berrios: Or just give me your full number and I can message you. Would love to see some more pies of you…make aure your real<emoji smile face>

OCE:   I texted u.

OCE:   Lol

15.    At that time, the OCE used the phone number provided to begin corresponding with Berrios by text message, and the following excerpt of conversation occurred:

Berrios: Nice, so u are 18 and live in Champaign:

OCE:   Well I'm not technically 18…lol

OCE:   I'm almost 16

Berrios: Whatcha mean?

Berrios: Oh wow

Berrios: Your young

OCE:   Ya. Very mature though. I'm not into guys my age

Berrios: You got a great body though for only being 16

Berrios: Cool…yea I am not into gals my age cause in my head Im 18 and always will be.

OCE:   15. Lol. And thanks

Berrios: Im a kid at heart and I game and smoke weed and stay up late and love going places to just have fun and enjoy life.

Berrios: Tell me more about you

OCE:    I'm 15 and I hate school. Lol. Like to hang out with friends.

16.    The conversation between Berrios and OCE continued with both casual and sexual discussion. During the conversations Berrios also asked for pictures of the individual he believed to be a minor. The following excerpt occurred:

Berrios: **Ok then I would love to eat your tight little pussy and lick you all**

Berrios: That better?

OCE:    O wow. Now were talking. Lol

Berrios: Would love to restrain your arms on the bed and pass a cold ice along your body while you are blindfold

Berrios: Would live to spank you and have you call me daddy.

OCE:    I def have never done anything like that. Lol. Sounds hot though

Berrios: Would do 69 and from behind and you riding me

Berrios: You would love getting it from behind

Berrios: I would kiss your buttchecks and bite them

OCE:    My best friend said from behind is her favorite

Berrios: From behind is good for you and also riding me while on the couch…that one get me real deep inside you

OCE:    Omg that sounds amazing

OCE:    Just be easy on me at first. Lol

Berrios: **Can u give me a preview of what I would be eating? Or is that too much?**

Berrios: I am gentle if need be.

OCE:    I don't wanna do nudes but I'll send u a little something. Lol

Berrios: I wouldn't just ram it in…I would ease it in

Berrios: A little something works.

17.    A meeting and location between OCE and Berrios was discussed, and was tentatively set for August 28, 2020. As the conversation continued, the following excerpt occurred:

Berrios: So …want to make sure…do u want me to bring condoms or no? I am clean and I cant get u pregnant…so you would get the full pleasure of your first time if you don't use it.…I will though if you want me to.

OCE:    No u don't have to if there is no way I can get pregnant. That's all I was worried about.  I trust u don't have a disease or something. Lol

OCE:    But can u still bring lube

20

Berrios: Lube?....sure. Why though?

OCE: my bf told me to use it on my first time…she said it would help it not hurt. Do u thing we need it?

OCE: Bf is best friend not boy friend. Lol

Berrios: Lol…ok I will bring it just in case we need it.

OCE: Ok. I just thought it might help it hurt less but I trust u

Berrios: Ok thank you baby

Berrios: Oh man…talking about this is making me horny…lol

OCE: Me too. Lol. I wish it was tomorrow

Berrios: I wish it was…|would be almost heading there.

18.  As the conversation continued, the following excerpt occurred:

Berrios: Gotta go grab later some of that white claw for you. What is the flavor you like?

OCE: I liked the black cherry but I'll try whatever. I'm not picky.

Berrios: Oh…you are perfect. Not being picky is amazing.

19.  In total, the conversations via MeetMe and text message took place between August 24, 2020, and August 28, 2020

20.  On August 28, 2020, law enforcement conducted an operation for Berrios to meet a fifteen-year-old girl at a predetermined residence in Springfield, Illinois, to engage in a sexual encounter with a minor. The

OCE maintained text message contact with Berrios during this time, and surveillance on Berrios revealed that he arrived and parked his 2020 Nissan Versa in the driveway at the predetermined residence.

21.    An interview was attempted with Berrios at which point he requested a lawyer. As agents were preparing his transportation to jail, Berrios started breathing heavily and fell to the ground.

22.    Due to Berrios' physical condition during the interview, which included rapid and heavy breathing, highly emotional responses, beating his chest with a clinched hand, falling out of a chair and hitting his head on the ground, law enforcement called 911 and requested paramedics. Berrios was taken to the emergency room at HSHS Hospital, Springfield, Illinois, where he agreed to waive his right to counsel and to be interviewed further.

23.    Berrios told law enforcement that he started talking to Alexis, who was 18 years old.  Alexis was the profile name of the OCE profile. When Agents pointed out that the OCE profile mentioned they were underage, Berrios changed his story and stated that he thought the profile was fake. Berrios then changed his story again and stated he was going to save her.

24.    Berrios told law enforcement that he told his friend, Paul Ainscough, that he was going to save her. Berrios also stated that he was going to go play cards with his friends.

25.    When Agents asked Berrios why he asked the OCE if they were law enforcement, Berrios stated because he thought he was supposed to get the correct answer.

26.    Berrios acknowledged that the OCE was a minor but stated he did not believe her. He stated that he wrote the sexually explicit messages to a minor, because he plays games.

27.    Berrios was arrested for attempted enticement of a minor and on September 16, 2020, a grand jury sitting in the Central District of Illinois returned an indictment for one count of Attempted Enticement of a Minor and one count of Use of Interstate Facilities to Attempt to Transmit Information About a Minor. Berrios is currently awaiting trial.

28.    On November 4, 2020, Agents conducted a forensic review of Berrios' Samsung cell phone, which revealed that there were text messages with several women involving setting up meetings and prices. Following these meetings, text messages found on Berrios' cell phone indicated there was sexual activity. According to the discovered messages, at least one of the females that Berrios met, Haley (last name unknown),

was under the age of 18 years old. According to the messages, Haley was 17 years old. Text messages revealed that Berrios continued to pay money to Haley for sex and eventually arranged for her to stay at his apartment as long as they engaged in sexual intercourse. To date, law enforcement has not been able to identify Haley.

29.   On March 10, 2021, FBI Special Agents had a follow up interview with Paul Ainscough, who stated that Berrios only told him that he was going to a girl's house that Berrios met online. Ainscough stated Berrios never told him he was going to "save" the girl for any reason. Ainscough asked Berrios why Berrios was meeting with another girl while he had a girlfriend, to which Berrios replied he and his current girlfriend were not getting along.

30.   On April 2, 2021, FBI Special Agents interviewed April Smith, believed to be Berrios' girlfriend at the time of his arrest, who stated that Berrios told her he was going to play cards the night of his arrest. After his arrest, Smith stated that Berrios' defense attorney and another female came to Smith and Berrios' apartment and searched his electronics, including the Device. After that, Berrios directed Smith to delete files from the Device. Smith described deleting five to seven photos from the Device at Berrios' direction. She described the photos as nude images of minor

females with exposed genitalia. When Agents asked her how she knew the individuals in the images were minors, she stated they looked like they were 15 years old.

31.    According to Smith she used the Device every day, had the password to the Device, and was in physical possession of the Device at the time of the interview. Smith gave consent to Agents to seize and search the Device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

32.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

33.    There is probable cause to believe that things that were once stored on the Device may still be stored there, for at least the following reasons:

> a. Based on my knowledge, training, and experience, I know that files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage

25

medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on an electronic device, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a Device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, electronic storage media—in particular, the Devices' internal hard drives—contain electronic evidence of how the Device has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating

system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

34. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

e. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that

27

has been deleted from a word processing file or files from a cell phone that was attached to the electronic device).

f.  Forensic evidence on a device can also indicate who has used or controlled the device.

g.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

h.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how the device behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

28

i. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

35. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

36. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

37. Based upon all of the aforementioned information obtained by the affiant, the affiant believes there is Probable Cause to search the

Device for additional evidence of child victims, child pornography

possession, child pornography distribution, and attempted enticement. The

affiant has thus set forth the facts necessary to establish Probable Cause

to believe that additional evidence of violations of Title 18 United States

Code, Sections 2251, 2252, and 2252A, 2422 which among other things,

make it a federal crime for any person to knowingly possess and/or receive

or distribute child pornography, and for any person to knowingly attempt to

entice a minor into sexual activity, will be contained on the **Device** and that

evidence, fruits and instrumentalities of these offenses are located within

the items described herein and are contained within the **Device.**

Respectfully submitted,

s/ Anthony Wright

Anthony Wright, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me by Telephone t. SH.
on 04 14 2021

s/ Tom Schanzle-Haskins

Tom Schanzle-Haskins
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

The property to be searched is a custom-built black desktop with Thermaltake label on the front, with a visible GEForce GTX hard drive, serial number 602-V809-722SD1709002312, and a visible Samsung hard drive, serial number C3161-G74A-A2IGQ, that was found in the possession of April Smith, date of birth June 29, 1999, during an interview on April 2, 2021. April Smith gave Agents consent to take possession of the desktop, and it is The statements contained in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.currently in FBI evidence at 900 East Linton Avenue, Springfield, Illinois 62703.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of:

    a. **Sexual Exploitation of a Minor (18 U.S.C. § 2251(a)):** prohibits any person from employing, using, persuading, inducing, enticing, or coercing any minor to engage in, or having a minor assist any other person to engage in, any sexually explicit conduct outside the United States, its territories or possessions, for the purpose of producing any visual depiction of such conduct if such person intends the visual depiction to be transported to the United States, its territories or possessions, by any means, including by using any means or facility of interstate or foreign commerce or mail, or the person transports such visual depiction to the United States its territories or possessions, by any means, including by using any means or facility of interstate or foreign commerce or mail. It is also a crime to attempt to commit this offense.

    b. **Receipt and distribution of Child Pornography (18. U.S.C. § 2252A(a)(2)):** prohibits knowingly receiving or distributing any

2

child pornography that has been mailed or shipped or transported in interstate or foreign commerce by any means, including by computer.

c. **Possession of Child Pornography (18 U.S.C. § 2252A(b)(5)(B)):** prohibits a person from knowingly possessing any book, magazine, periodical, film, videotape, computer disk, or other material that contains an image of child pornography that has been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer.

d. **Receipt and Possession of Child Pornography (18 U.S.C. § 2252):** prohibits a person from knowingly receiving and possessing any visual depiction of minors engaging in sexually explicit conduct when such visual depiction was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such visual depiction was produced using materials that had traveled in interstate or

3

foreign commerce.  It is also a crime to attempt to commit this offense.

e. **Enticement of a Minor (18 U.S.C. §  2422(b)):** prohibits a person from using the mail or any facility or means of interstate or foreign commerce, to knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense. It is also a crime to attempt to commit this offense.

2. Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, e-mail messages, chat logs and electronic messages) pertaining to the possession, receipt, or distribution of child pornography as defined in 18 U.S.C. § 2256(2).

3. In any format and medium of child pornography as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or child erotica.

4. Any and all diaries, address books, names, and lists of names and addresses of individuals who may have been contacted by the use of the phone or by other means for the purpose of distributing or receiving child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of

4

minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

5. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited e-mail messages, chat logs and electronic messages), identifying persons transmitting, through interstate or foreign commerce by any means, including, but not limited to, by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(2).

6. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited, to, e-mail messages, chat logs and electronic messages, other digital data files and web cache information) concerning the receipt, transmission, or possession of child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 (2).

7. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the

5

existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

8.  Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

9.  Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited  to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

10.     Any and all enclosed memory cards or other photographic equipment.

11.     Any and all visual depictions of minors.

12.     Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or

6

medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

13.     Any and all electronic diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

14.     This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied

7

electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

15.      Authorizing officers are authorized to secure the above computer related items and transport them to an off-site secure location, to continue the search of the computer items and computer storage devices for the following items:

    a. Computer files, data, or other similar visual reproduction containing any sexually explicit visual images/videos or depiction by computer, of any child whom the person knows or reasonably should know to be under the age of 18 years of age and such child is:

    b. Actually, or by simulation engaged in any act of sexual intercourse with any person or animal;

    c. Actually, or by simulation engaged in any act of sexual contact involving the sex organs of the child and the mouth, anus or sex organs of the child and the sex organs of another person or animal;

    d. Actually, or by simulation engaged in any act of masturbation;

e. Actually, or by simulation portrayed as being the object of, or otherwise engaged in, any act of lewd fondling, touching, or caressing involving another person or animal;

f. Actually, or by simulation engaged in any act of excretion or urination within a sexual context;

g. Actually, or by simulation portrayed or depicted as bound, fettered, or subject to sadistic, masochistic, or sadomasochistic abuse in any sexual context; or

h. Depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed genitals, pubic area, buttocks or, if such person is female, a fully or partially developed breast of the child.

i. Computer data files, records, logs associated with any of the above described files which may identify, trace, or record the facts, including but not limited to the date, time, modification, alteration, transmission or receipt via the Internet or other networks of any of the computer files described above, including, but not limited to file menus, Internet browser history, cache directories, registry entries, logs, and files.

9

j.  Computer data files in the form of email, instant messaging, chat logs, or other communication logs, the contents of which involves the attempt to find, possess, acquire, store, or distribute child pornography.

k.  Internet searches, stored within a computer file or data, using Internet search engines or file sharing programs for child pornography

l.  Any and all files associated with the installation, configuration and use of any Peer-to-Peer file sharing client software program, such as eMule, Shareaza, eMule, etc...

m.  Computer files and/or data that assist in identifying use, custody, control, or ownership of the computer systems and the removable storage devices.

n.  Computer files and/or data that contain passwords, access codes, usernames, or other identifiers necessary to examine or access items, software, or information seized.